IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH L. BRACKIN** | : | |
| *Individually on behalf of himself and on behalf* | : | |
| *of all others similarly situated*, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **AIR LIQUIDE INDUSTRIAL U.S., L.P.,** | : | No. 15-4945 |
| *Defendant*. | : | |

PRATTER, J.                                                                              OCTOBER 26, 2016

## MEMORANDUM

Joseph L. Brackin brings this Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* action against Air Liquide Industrial U.S., L.P.[1] Mr. Brackin, on behalf of himself and those similarly situated, alleges that Air Liquide failed to pay Field Service Technicians ("FST") for compensable on-call time. Accordingly, Mr. Brackin has filed a Motion for Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs ("Motion for Certification"). Air Liquide has filed a Motion for Summary Judgment and opposes Mr. Brackin's Motion for Certification. For the reasons that follow, the Court will grant Air Liquide's Motion for Summary Judgment.[2]

---

[1] Mr. Brackin also asserts claims pursuant the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.* and the Pennsylvania Wage Payment & Collection Law, 43 P.S § 260.1 *et seq.* However, Mr. Brackin does not oppose Air Liquide's Motion for Summary Judgment with respect to these claims.

[2] Because the Court will grant Air Liquide's Motion for Summary Judgment, Mr. Brackin's Motion for Certification is moot. *Accord Freeman v. Med Star Health Inc.*, --- F. Supp. 3d ---, 2016 WL 2962188, at *3 (D.D.C. May 20, 2016) (refusing to conditionally certify class of plaintiffs where the named plaintiffs had already lost on summary judgment).

**I.   FACTUAL BACKGROUND[3]**

Air Liquide supplies industrial gases in bulk quantities to customers in nearly every industry, including chemicals, healthcare, pharmaceuticals, and many others. Air Liquide employs FSTs whose job is to tend to customers' needs pertaining to the equipment that stores and processes cryogenic liquids. An FST's work is conducted at customer locations. FSTs are assigned to a specific geographic region, although there are instances when Air Liquide may ask an FST with available time to work outside of his or her region if another region faces personnel shortages. Mr. Brackin and Tomas Ciccarelli[4] were FSTs in the Northeast Region,[5] which is comprised of Maine, Vermont, New Hampshire, Massachusetts, Rhode Island, Connecticut, New York, Pennsylvania, Delaware, Maryland, New Jersey, Virginia, and a portion of North Carolina. Air Liquide typically employed 12 to 14 FSTs in the Northeast Region at a time. Each FST is based out of his or her own home. Air Liquide provides each FST with a company vehicle for use in the performance of company duties.

FSTs' core business hours are from 8 a.m. to 5 p.m., Monday through Friday. FSTs, however, must also be on-call to service unexpected maintenance issues 24 hours per day, seven days per week. Air Liquide informs FSTs when they are hired that being on call 24/7 is part of their job responsibilities.

Air Liquide customers are provided with an 800-number they can call when an emergency arises outside of normal business hours. After-hour customer calls are routed through an after-hours desk ("Dispatch"). After Dispatch receives a call, it works to connect the

---

[3]   All facts are undisputed unless otherwise stated, in which case they are interpreted in the manner most favorable to Mr. Brackin.

[4]   On February 24, 2016, Thomas E. Ciccarelli filed his consent to join this action as required by 29 U.S.C. § 216(b).

[5]   Kenneth Marple and Paul Coleman, whose deposition testimony Air Liquide relies on in its Motion, were also FSTs in the Northeast Region at the relevant time.

customer with the designated FST. The FST is then supposed to determine whether the situation is severe enough to warrant an immediate response. Not all after-hours calls require an FST to immediately travel to a customer site.

Air Liquide does not permit FSTs to work more than 14 hours per day and will reprimand FSTs who exceed that limit. Some FSTs even shut their phones off after they hit the 14-hour limit. When no FSTs are available to service a customer's call, Air Liquide can engage a third-party vendor to perform an FST's responsibilities.

Air Liquide works to manage and minimize overtime.[6] If, for example, an FST has worked 40 hours by Thursday evening, Air Liquide would instruct the FST not to work on Friday (an "on-call Friday").[7]

FSTs track their time using a time-keeping program called Maximo. FSTs are compensated based on the entries they record in Maximo. When an FST receives a "call"[8] he or she is compensated based on the greater of 15 minutes or the length of time spent on the call. When an FST gets "called-out," he or she is compensated at an overtime rate for the greater of four hours or the actual time spent responding to the call. To be compensated properly for call-

---

[6] Air Liquide considers overtime as any hours worked after an FST reached 40 hours in a week. Overtime is paid at time and a half.

[7] Mr. Brackin argues there is a material dispute of fact as to whether FSTs were required to be "at home" (Mr. Brackin's stance) or "on-call and available" (Air Liquide's stance) during "on-call Fridays."

[8] The parties dispute the proper definitions of the terms "on-call," "call," and "call-out." Air Liquide defines (i) "on-call" as the time "after an FST has returned home for the day and the weekends"; (ii) "call" as calls an FST receives while on-call; and (iii) "call-out" as an instance where an FST must travel to a customer site after receiving a call. Def. SOMF ¶¶ 10 n.1, 20 n.2, n.3 (Doc. No. 36). Mr. Brackin believes "on-call" should refer to anything outside of an FST's core business hours. Accordingly, Mr. Brackin asserts that a "call" should refer to anytime an FST receives a call after 5 p.m. and that a "call-out" should refer to a work order "starting after an eight hour workday, at a different location." Opp'n to Mot. for Summ. J. at 22 (Doc. No. 38). For the purposes of Air Liquide's Motion for Summary Judgment, the Court will adopt Mr. Brackin's definitions.

outs, FSTs must enter the appropriate information into Maximo.  An FST can also contact the company's payroll department if he or she did not properly enter time as call-out time.  FSTs are not otherwise compensated for time spent while on-call.

There are few, if any, written requirements describing what an FST may or may not do while on-call.  For example, there are no written requirements mandating FSTs to stay within a particular distance of their home or truck while on-call and no written requirements setting forth a time within which an FST must respond to a call.  While FSTs are forbidden from working while intoxicated, there is no written policy prohibiting FSTs from consuming alcohol while on-call.  While on-call, FSTs are only required to carry their Air Liquide phone and be available.

Mr. Brackin's time records reflect that he was ultimately called-out six times in 2013 and four times in 2014.  While Mr. Brackin does not recall how many times he was called-out in 2013 and 2014, he believes it was more frequent than his time records reflect.  Mr. Brackin blames the discrepancy on his sloppy recordkeeping.  Under Mr. Brackin's definition of "call-out," Mr. Brackin's time records reflect 30 call-outs from 2012-2014, a period which also included two months off for short-term disability and three months off for vacation.

Mr. Ciccarelli's time records reflect that he was called-out twice in 2013 and twice again in 2014.  Mr. Ciccarelli believes he was called out more frequently than his time records reflect.  Mr. Ciccarelli recalls he was called-out 15 to 20 times in 2013 and six or seven times in 2014.  Mr. Ciccarelli also blames the discrepancy on his own sloppy recordkeeping.

Despite his on-call responsibilities, Mr. Brackin has been able to own and operate a business called Brackin's Plumbing Heating and Air, LLC ("BPHA").  Mr. Brackin utilizes his evenings and weekends to service his BPHA clients.  In 2013 alone, BPHA generated over $300,000 in revenue.  Mr. Brackin was also able to pursue other personal activities while on-call,

such as taking care of home responsibilities like mowing the grass and feeding his dogs, and personal social and recreational activities such as going out to dinner, the movies, or a ballgame. Mr. Ciccarelli was also able to pursue personal activities while on-call. For example, Mr. Ciccarelli could have a beer with dinner, mow the grass, go to the movies, and watch his child's sports games. Additionally, Mr. Ciccarelli traveled to Boston, Cape Cod, and New Hampshire for non-work reasons while on-call.

Air Liquide provides three primary methods for FSTs to have a break from their on-call responsibilities. First, Air Liquide provides from ten to 25 vacations days per year during which FSTs are not on call. FSTs must make vacation requests through their supervisors. Second, Air Liquide provides FSTs with three days of paid personal time, during which an FST is not on call. Third, Air Liquide permits FSTs to request that another FST cover their on-call time.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it could reasonably affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "'showing' – that is,

5

pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.  Summary judgment is appropriate if the non-moving party fails to rebut the movant's assertion(s) by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  Under Rule 56, the court must view the evidence presented in the motion in the light most favorable to the opposing party, in this instance, Mr. Brackin.  *Anderson*, 477 U.S. at 255.

The Third Circuit Court of Appeals has made clear that while "the issue of *how* a plaintiff spends his on-call time is one of fact" that is not appropriate to resolve at the summary judgment stage, "once there is no genuine issues of material fact as to how a plaintiff spends his on-call time, the determination of whether a plaintiff's activities exclude him from the overtime benefits of the FLSA is a question of law, which can properly be resolved on summary judgment." *Ingram v. Cty. of Bucks*, 144 F.3d 265, 267 (3d Cir. 1998) (emphasis in original) (citations and internal quotation marks omitted).

### III. DISCUSSION

In opposing summary judgment, Mr. Brackin raises two primary arguments.  First, Mr. Brackin argues there is a genuine issue of material fact as to whether Air Liquide required FSTs to remain at home on "on-call Fridays."  Second, Mr. Brackin argues that, as a matter of law, the effective restrictions on the FSTs' time when on-call prevented them from utilizing their on-call time for personal pursuits.  Air Liquide, meanwhile, argues that the factual record is clear that (i) FSTs were not required to remain at home on "on-call Fridays" and (ii) FSTs were able to, and in fact did, engage in personal pursuits while they were on-call.  Because the Court finds

there are no genuine issues of material fact on these points and that FSTs are able to engage in personal pursuits while on-call, Air Liquide's Motion for Summary Judgment will be granted.

### A.   Disputes of Fact

Mr. Brackin asserts several disputes of fact, including (i) whether FSTs were required to stay at home on "on-call Fridays," (ii) whether FSTs were expected to take every call while on-call, (iii) whether FSTs were required to respond to calls immediately, (iv) whether FSTs were actually able to switch on-call time, and (v) the frequency of call-outs FSTs received. The only potential genuine issue of material fact asserted by Mr. Brackin, however, is whether FSTs were required to stay at home on "on-call Fridays."[9] If Air Liquide did require FSTs to remain physically at home during "on-call Fridays," a reasonable jury then could conclude that FSTs were restricted in their ability to engage in personal activities during that time.

Mr. Brackin puts forth three pieces of evidence for why there is a genuine dispute of material fact as to whether Air Liquide requires FSTs to remain physically at home during "on-call Fridays." First, Mr. Brackin points to a November 15, 2011 email from Rick Williams, Air Liquide's Northern Zone Technical Manager at the time. In this email, Mr. Williams writes, "When you have 40 hours in, you are expected to be at home. Since we are a service organization, you will, however be expected to keep your phone with you to be able to respond

---

[9]   First, with regard to Mr. Brackin's assertion that FSTs were expected to take every call they received while on-call, there is no dispute that FSTs were compensated for time spent on the phone with a customer. Mr. Brackin failed to present any evidence that merely needing to respond to a call (as opposed to having to undertake a call-out) interfered with his or other FSTs' ability to pursue personal activities. Second, the record indisputably shows that FSTs did not have to respond immediately in the event of a call-out. Despite the fact that emergency situations requiring an "immediate response" were possible, Opp'n to Mot. for Summ. J. Ex. B at 43:05-07, Air Liquide did not maintain a required response time and FSTs traveled significant distances from their home and away from the company vehicle while on-call. Third, with regard to whether FSTs could reasonably switch on-call time and the frequency with which FSTs were called-out, the Court will accept Mr. Brackin's factual assertions for the purposes of this motion.

should an emergency arise." Opp'n to Mot. for Summ. J. Ex. F. Second, Mr. Brackin cites the deposition transcript of Kenneth Marple, who was also an FST in the Northeast Region at the relevant time. Mr. Marple stated in his deposition, "I had reached 40 hours -- we were told . . . that overtime must be approved. . . . I had reached 40 hours by Thursday so I sent a text to Brian [Craig] asking if I should work Friday or stay home since I've reached the 40 hour limit and I believe his response was stay home, be available." Opp'n to Mot. for Summ. J. Ex. E at 29:10-17. Last, Mr. Brackin cites his own deposition transcript, where he stated that he understood Air Liquide's expectation of him on an "on-call Friday" was to "Stay home. Be prepared to go on a service call." Opp'n to Mot. for Summ. J. Ex. D at 295:22-296:3.

Air Liquide argues that (i) Mr. Williams' email did not apply to the time period relevant to this lawsuit[10] and (ii) Mr. Brackin has apple-picked deposition testimony and that the record as a whole is clear that FSTs were not required to stay at home during "on-call Fridays," or any other time FSTs were on-call.

The Court agrees that Mr. Williams' November 2011 email is not relevant to whether or not Air Liquide required its FSTs to remain physically at home on "on-call Fridays" between September 2, 2012 and September 2, 2015. The email, sent on November 15, 2011, explicitly states that the "cost saving measures" contained within the email, including Mr. Williams' statement that FSTs were "expected to be at home" after working 40 hours in a week, only applied "through the end of the [2011] year." Opp'n to Mot. for Summ. J. Ex. F. Mr. Brackin has not pointed to any evidence at all in the record that this alleged be-at-home policy remained in effect past December 31, 2011.

---

[10] This lawsuit covers Air Liquide's policies with regard to FSTs' on-call time in the three years leading up to the filing of this lawsuit. *See* Compl. ¶¶ 2, 22. Because Mr. Brackin filed his complaint on September 2, 2015, the relevant time period for this suit is from September 2, 2012 through September 2, 2015.

Even if, however, Mr. Brackin were able to prove Air Liquide maintained a policy requiring FSTs to remain at home during "on-call Fridays," the record is clear from the depositions of four FSTs that FSTs did not actually believe they were required to remain at home during "on-call Fridays" or any other on-call period. Indeed, they did not do so. First, when Mr. Brackin was asked whether Air Liquide ever told him they expected him to stay home while on call, Mr. Brackin responded, "Of course not." Mot. for Summ. J. Ex. B at 151:15-17 (Doc. No. 36). When asked whether he was permitted "to go to a baseball game during work hours" on an "on-call Friday," Mr. Brackin responded, "No one said I couldn't." Mot. for Summ. J. Ex. B at 296:4-7. Second, when asked about Air Liquide's expectations concerning "on-call Fridays," Mr. Ciccarelli was asked whether he had to "actually physically stay in [his] house." Mr. Ciccarelli responded, "No." Mot. for Summ. J. Ex. C at 159:3-6. Third, Mr. Marple testified during his deposition that when communicating with Mr. Craig about "on-call Fridays," he actually remembered Mr. Craig's instruction was to just "be available," not to "stay home." Opp'n to Mot. for Cert. Ex. D at 71:3-8 (Doc. No. 37). Fourth, Paul Coleman testified during his deposition with regard to Air Liquide's expectations of FSTs on "on-call Fridays" that FSTs were expected to have their phones on them, but they were not required to sit at home. Mot. for Summ. J. Ex. E at 32:15-33:7. Accordingly, the Court finds that Mr. Brackin has failed to present "specific facts showing that there is a genuine issue for trial." *United States v. Premises Known as 717 S. Woodward St., Allentown, Pa.*, 2 F.3d 529, 533 (3d Cir. 1993).[11] Mr. Brackin's subjective belief as stated for this litigation that he had to remain physically at home during "on-call Fridays," in the absence of evidence that Air Liquide mandated such action or that other

---

[11] The record is clear, and Mr. Brackin does not dispute, that FSTs were permitted to leave their home during "on-call" evenings and weekends.

9

FSTs were also led to believe such action was required, is not sufficient to defeat summary judgment.

  **B.**  *Ingram* **Factors**

  Section 207(a) of the FLSA requires that employees receive at least one and a half times pay for any overtime work in excess of 40 hours a week.  29 U.S.C. § 207(a).  The FLSA is silent as to whether on-call time is compensable, but the Supreme Court has held that, under certain circumstances, on-call time can be compensable.  *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944); *Skidmore v. Swift & Co.*, 323 U.S. 134, 136 (1944).

  Department of Labor regulations elaborate that on-call time is compensable where an employee's on-call responsibilities effectively preclude the employee from "using the time for personal pursuits."  29 C.F.R. § 553.221(c), (d).[12]  The Third Circuit Court of Appeals utilizes a four factor test when determining whether on-call time is compensable:  (i) "whether the employee may carry a beeper or leave home;" (ii) "the frequency of calls and the nature of the employer's demands;" (iii) "the employee's ability to maintain a flexible on-call schedule and switch on-call shifts;" and (iv) "whether the employee actually engaged in personal activities during on-call time."  *Ingram*, 144 F.3d at 268.  Only if an analysis of these factors "reveal[s] onerous on-call policies and significant interference with the employee's personal life" is the on-call time compensable.  Because three of the four *Ingram* factors weigh decisively in favor of finding the FSTs' on-call time to be non-compensable, the Court finds that Air Liquide has not violated the FLSA by not compensating FSTs for time spent on-call.

---

[12]  The regulations describe, as an example of a situation that would normally constitute non-compensable on-call time, a fire department employee who returns home "with the understanding that he or she is expected to return to work in the event of an emergency in the night."  29 C.F.R. § 553.221(d).

10

1. First *Ingram* Factor

The first *Ingram* factor asks "whether the employee may carry a beeper or leave home." *Ingram*, 144 F.3d at 268. Courts of appeals have regularly found that this factor weighs against compensable on-call time where an employer only requires an employee to keep a beeper or phone on his or her person, but otherwise permits the employee relative free range of movement. *See id.* (affirming district court's ruling that the on-call time was not compensable where employees were permitted to "carry a beeper or leave word where they may be reached"); *Jonites v. Exelon Corp.*, 522 F.3d 721, 723-24 (7th Cir. 2008) (on-call time not compensable where employees must carry a pager, respond to 35 percent of calls, and stay within a two-hour radius of their work station); *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 739-40 (6th Cir. 2000) (on call time not compensable where employee could leave home with a pager); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 612 (6th Cir. 1992) (on-call time not compensable where employees could leave home and only needed to respond to a phone or page); *Bright v. Houston Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 676 (5th Cir. 1991) (en banc) (on-call time not compensable where employee needed to be reachable by beeper with the ability to respond within approximately 20 minutes). Only where an employee's freedom of movement is significantly curtailed, will this this factor weigh in favor of compensable on-call time. *See, e.g.*, *Cross v. Ark. Forestry Comm'n*, 938 F.2d 912, 916-17 (8th Cir. 1991) (on-call time compensable when employees had to continuously monitor radio transmissions, as opposed to being able to be contacted via phone or pager, where employee had to stay within the 35-50 mile radius of the radio's reception area). Here, the only requirement Air Liquide imposes on FSTs while on-call is to carry their Air Liquide phone on their person. Furthermore, the evidence demonstrates that FSTs certainly felt comfortable traveling anywhere from one to two hours away from their home

while on call. Accordingly, this factor weighs decisively in favor of finding the FSTs' on-call time non-compensable.

## 2. Second *Ingram* Factor

The second *Ingram* factor considers "the frequency of calls and the nature of the employer's demands." *Ingram*, 144 F.3d at 268. On-call time is more likely to be compensable under the FLSA where an employee is called multiple times a day while on-call, with a short required response time. *See id.* at 269. In *Ingram*, the employees in question could not show that they had to respond to calls multiple times a day. Further, the employees had between 15 and 45 minutes to respond to a call before leaving home. *Id.* Under these circumstances, on-call time was not compensable. *Id.*; *see also Gilligan v. City of Emporia*, 986 F.2d 410, 412 (10th Cir. 1993)(on-call time not compensable where employees were called, on average, less than once a day, with a response time of 30 minutes to one hour); *Armitage v. City of Emporia*, 982 F.2d 430, 432 (10th Cir. 1992) (on-call time not compensable where employees were called, on average, less than twice a week, with a corresponding 20 minute response time); *Bright*, 934 F.2d at 673-75 (on-call time not compensable where medical equipment repair technicians were called, on average, twice a week and two to three times on weekends, with a corresponding 20 minute response time). Here, accepting Mr. Brackin's definition of a call-out, Mr. Brackin was called-out 30 times over a 31 month period.[13] This amounts to slightly less than one time a month. Further, Mr. Ciccarelli's recollection that he was called out up to 15 or 20 times a year still amounts to an average of less than two call-outs a month. And, unlike in the cases where employees were required to respond to a call within five or 20 minutes, there is no requirement mandating that an Air Liquide FST respond to a call within a certain amount of time. Because

---

[13] Mr. Brackin listed 30 time entries he deemed a call-out covering the years 2012-2014. Over this time period, Mr. Brackin took two months of short-term disability and three months of vacation.

even Mr. Brackin understood he could travel up to an hour away from his home and from the company vehicle while on-call, it is clear that Mr. Brackin believed responding to a call within an hour's time was sufficient.

Mr. Brackin cites three readily distinguishable cases in support of his argument that the demands on FSTs while on-call significantly interfered with their personal time. In *Spencer v. Hyde Cty.*, the relevant employees worked as emergency medical technicians ("EMTs") on an island. 959 F. Supp. 721, 722 (E.D.N.C. 1997). The EMTs understood that when a call came in, they were expected to respond within five minutes. *Id.* The EMTs were not permitted to leave the island when on call. *Id.* Due to the island's small size, this restriction prevented the EMTs from being able to pursue personal activities such as shopping at a super market, attending movies, or going to a doctor. *Id.* at 723. Because the EMTs could not pursue a wide range of personal activities due to their confinement on the island while on call, the court found the on-call time to be compensable. *Id.* at 727. In contrast, however, Mr. Brackin and the other FSTs here were able to perform all the activities the EMTs in *Spencer* could not, such as go to the doctor, supermarket, or movies.

Mr. Brackin next cites *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407 (5th Cir. 1990), to argue that Mr. Brackin's understanding that he could only travel up to an hour away from home supports a finding of compensable on-call time. In *Mireles*, the Fifth Circuit Court of Appeals held that *wait times* of up to 45 minutes were compensable under the FLSA. *Id.* at 1411-14. *Mireles* is a case about *wait times*, or the amount of time an employee had to wait before reporting to work. The Fifth Circuit Court of Appeals affirmed the district court's finding that forcing an employee to wait, either on or off the employer's premises, for up to 45 minutes prior to commencing work, constituted compensable time because of the difficulty of using such short

13

amounts of time for personal pursuits. *Id.* at 1411-12. The FSTs' on-call responsibilities here are not analogous to the workers' wait time in *Mireles*. Rather than being limited to 45 minute or less increments of time for personal use, Mr. Brackin and other FSTs had no limits on their personal time until a call came in requiring a response.

Lastly, Mr. Brackin argues that the fact certain FSTs received text messages from an equipment messaging service while on-call is analogous to the firefighter employees in *Cross v. Arkansas Forestry Commission* who had to constantly monitor radios and remain within a 35-50 mile radius in order to stay within the radio's reception area. 938 F.2d at 916-17. Again, Mr. Brackin's comparison fails. First, the Eighth Circuit Court of Appeals in *Cross* explicitly differentiated the firefighters' responsibility to constantly monitor the radio from the more typical case of an employer contacting an employee through a phone or pager, as is the case here. *Id.* at 917. Second, the firefighters in *Cross* had to stay within a 35-50 mile radius in order to monitor their radios. *Id.* Air Liquide's FSTs were under no such obligation or limitation as the FSTs that did receive text messages received those messages via their Air Liquide phones. Third, the court in *Cross* found that the need to keep the radio on at all times interfered with the firefighters' ability to entertain in their homes, attend social gatherings, or conduct other personal pursuits. *Id.* The evidence here shows that FSTs who received text messages were able to continue pursuing personal activities and some even left their phones outside of their bedrooms in order to avoid hearing the incoming text messages at night. *See, e.g.*, Opp'n to Mot. for Cert. Ex. D at 80:24-81:4.

According to the evidence presented to the Court, FSTs were called-out, at most, once or twice a month, and had up to an hour to respond. These facts weigh decisively in favor of finding on-call time to be non-compensable.

3.  Third *Ingram* Factor

The third *Ingram* factor considers "the employee's ability to maintain a flexible on-call schedule and switch on-call shifts." *Ingram*, 144 F.3d at 268.  On-call time is more likely to be compensable when an employee is unable to trade shifts in order to pursue personal activities. *See id.* at 269; *see also Renfro v. City of Emporia*, 948 F.2d 1529, 1535 (10th Cir. 1991) (affirming summary judgment denial where firefighters made out a material dispute of fact as to the difficulty of trading on call shifts).

Air Liquide maintains that this factor weighs in its favor because it provided FSTs with the ability relieve themselves from their on call duties, including (i) ten to 25 days of vacation time a year, (ii) three personal paid days, and (iii) the ability to switch on-call time with other FSTs.  Mr. Brackin argues that this factor weighs in favor of compensable on-call time because FSTs (i) could not reasonably switch on-call time, (ii) were disciplined for failing to answer a call, and (iii) could only take vacation or personal days when the time requested did not conflict with another FSTs' on-call.  The Court will address each of Mr. Brackin's arguments in turn.

First, the Court gives credence to Mr. Brackin's argument that FSTs had difficulty trading on-call shifts.  While Mr. Brackin does not dispute that FSTs had the ability to trade on-call shifts, he argues that, in practicality, this rarely happened.  In *Renfro*, the Tenth Circuit Court of Appeals affirmed a district court's determination that firefighters' on-call time was compensable.  In support of its decision, the Tenth Circuit Court of Appeals discussed how the firefighters successfully demonstrated that it was very difficult for them to trade shifts, despite the defendant's policy permitting shift trading.  *Renfro*, 948 F.2d at 1534-35.  Here, Mr. Brackin has proffered deposition testimony that similarly shows that trading on-call shifts was a rarity.

Second, the Court does not find Air Liquide's alleged discipline of FSTs for failing to respond to a call to be a significant factor. The fact that an employee is disciplined for failing to respond to a call is not a factor that courts have considered significant in determining whether on-call time is compensable. *See Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 488 (6th Cir. 2006) ("The mere threat of discipline does not, by itself, prevent employees from effectively using their off-duty time for personal pursuits."); *Norton v. Worthen Van Serv., Inc.*, 839 F.2d 653, 654 (10th Cir. 1988) (on-call time not compensable where employee could be disciplined for failure to respond to a call, and fired after three failures). Furthermore, Mr. Brackin has presented no evidence to show that FSTs were *actually disciplined* for failing to answer a call.

Third, the Court determines that Mr. Brackin has not presented evidence to show that Air Liquide significantly interfered with FSTs' ability to take vacation time such that this *Ingram* factor should weigh in his favor. The record shows that Air Liquide provides FSTs with ten to 25 days of vacation time and three personal paid days off where FSTs did not have to be on call. Before taking vacation time, FSTs need to clear their time-off requests with their supervisors. Circumstances that can prevent an FST's request from being approved include other FSTs requesting off for the same period, an upcoming work commitment, or possible personnel shortages. Such conditions on an FST's ability to get a vacation time request approved does not render Air Liquide's vacation policy sufficiently "inflexible" to tilt this factor in Mr. Brackin's favor.

Here, while deposition testimony suggests that FSTs had difficulty getting cover for on-call shifts when they were not on an approved vacation or personal day, Air Liquide did provide each FST with 13 to 28 possible days off a year where they did not have to have any on-call

responsibilities. Accordingly, the Court finds that the third *Ingram* factor is neutral with regard to whether or not the FSTs' on-call time is compensable.

        4. Fourth *Ingram* Factor

The fourth *Ingram* factor asks "whether the employee actually engaged in personal activities during on-call time." *Ingram*, 144 F.3d at 268. Here, it is clear that FSTs could and did engage in a full range of personal pursuits while on-call. Not only was Mr. Brackin able to pursue personal activities such as going out to dinner, going to the movies, mowing the grass, going bowling, and feeding his dogs, but he was able to own and operate a completely separate business that generated hundreds of thousands of dollars in revenue. Mr. Brackin engaged in all of these pursuits while on-call. Furthermore, Mr. Brackin testified that, while on-call, he felt comfortable traveling up to an hour away from his home and away from his company vehicle.

Mr. Ciccarelli also demonstrated that he was able to engage in a range of personal pursuits while on-call. Mr. Ciccarelli traveled to Cape Cod, New Hampshire, and Boston for personal reasons, all of which were approximately one to two hours away from his home and away from his company truck. Mr. Ciccarelli also testified that he went out to dinner, drank beer, went to the movies, mowed his grass, and watched his child's sports games, all while on call.

Despite Messrs. Brackin and Ciccarelli's ability to engage in the personal activities describe above, being on call 24/7 can put a significant burden on FSTs' daily lives. The Court's focus, however, is not on whether Mr. Brackin had "substantially the same flexibility or freedom as he would if not on call," *Ingram*, 144 F.3d at 269 (quoting *Bright*, 934 F.2d at 677), but rather, whether Mr. Brackin "actually engage[d] in personal activities during on-call shifts." *Berry v. Cty. of Sonoma*, 30 F.3d 1174, 1185 (9th Cir. 1994). Because it is clear Mr. Brackin and other

FSTs engaged in personal activities while on call, this factor weighs in favor of finding the on-call time to be non-compensable.

IV. CONCLUSION

For the foregoing reasons, the Court will grant Air Liquide's Motion for Summary Judgment.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE